### Zackowski License

*William Fearen,* for appellant.

*John P. Harrington,* for Secretary of Revenue.

MILLER, J., December 23, 1963.— This is an appeal from an order of the Secretary of Revenue, entered pursuant to section 1405 of The Vehicle Code of April 29, 1959, P. L. 58, 75 PS §1405, which suspended appellant's motor vehicle privileges for failure to deposit the necessary security required by the State of New Jersey following a motor vehicle accident in that State. . . .

## Discussion

The section of The Vehicle Code which accords appellant the right to appeal to this court from the suspension of his motor vehicle privileges, and which delineates the court's jurisdiction and authority, is section 1401(b) of The Vehicle Code of April 29, 1959, P. L. 58, 75 PS §1401(b), as follows:

"(b) Any person aggrieved by an order or act of the secretary under the provisions of sections 1403 to 1411 of this act may, within ten (10) days after notice thereof, file a petition in the Court of Common Pleas of Dauphin County for a trial de novo to determine whether such order or act is lawful and reasonable. The filing of such a petition shall not suspend the order or act of the secretary, unless a stay thereof shall be allowed by a judge of said court pending final determination of the matter. The court shall summarily hear the petition, and may make any appropriate order or decree."

Appellant first contends that because this court is directed to conduct a "trial de novo" so that it may "determine whether such order or act is lawful and reasonable," we are vested with broad discretionary powers for the purpose of inquiring into the facts of a particular case, and thereafter deciding whether a financial responsibility suspension is warranted under such circumstances. Based on this contention, he additionally urges that his suspension is "unreasonable" on these facts because he is without liability for the happening of this accident. To the contrary, the Commonwealth argues that this court is vested with very little real discretion in the matter, and that its function is merely to decide whether the Secretary complied with the applicable portions of The Vehicle Code in entering the suspension, and if it finds that all the prerequisites of the law have been met, the court has no choice but to affirm the suspension order. Unfortunately, there is

a dearth of case authority on this issue, and it apparently has never found its way into our appellate courts.

Some years ago, under the similar provisions of the then applicable Motor Vehicle Safety Responsibility Act of June 1, 1945, P. L. 1340, this court, speaking through the late Judge Neely, later President Judge, in Roller License, 2 D. & C. 2d 743, 67 Dauph. 176 (1954), decided that the provisions of the act were constitutional, and that it was not a deprivation of due process, or an infringement of any other constitutional right, to suspend the vehicle privileges of a Pennsylvania resident under the provisions of this act, even though his liability had not been determined nor a judgment entered for damages following the automobile accident which gave rise to the suspension. However, it does not appear that the appellant in that case raised any question about his legal liability to respond in damages because of the facts of the accident involved, nor did appellant argue that the court had jurisdiction to inquire into such facts in determining the reasonableness and propriety of the suspension order. Another lower court case, by its conclusion, does sustain appellant's contentions, that being Commonwealth v. Carter, 48 Del. Co. 295 (1960), wherein the Delaware County court, speaking through Judge Curran, set aside appellant's suspension order on the grounds that the accident was not caused by appellant's negligence, that he had not been notified of the suspension until 10 months following the accident, and that the suspension notice did not advise appellant of the amount of security to be deposited with the Secretary of Revenue. The anomaly of this decision is that the Delaware County court, under the statutory provision above cited, was without jurisdiction to hear such appeal. However, the jurisdictional question apparently was not raised by the Commonwealth, nor do we find a record of any appeal to a higher court.

The scope of our discretionary powers in license suspension appeal matters was recently challenged by the Commonwealth in Commonwealth v. Sellers, 80 Dauph. 68 (1963), wherein it was argued that the court has little or no discretion where the suspension order is based upon a violation committed in another State. It was our conclusion there that the legislature intended to vest the exercise of discretionary powers in this court when it provided for the right of appeal from a suspension order. Our authority in that appeal was spelled out in section 620 of The Vehicle Code, which provides that the court is "to determine whether the petitioner is subject to the suspension of his operator's license"; here, our authority is to "determine whether the suspension order is lawful and reasonable." While the language differs, it appears that the import of these sections is the same. If anything, section 1401 (b) could be construed as conferring even broader discretionary powers than section 620; thus, the analysis found in Sellers, supra, at pages 72 through 78, as to the scope of our discretion, applies here with equal force. We can only conclude that our authority to determine whether a suspension order is "lawful *and reasonable*" means just what it says, and that the court has some latitude of inquiry into the reasonableness and propriety of this suspension order.

It must be understood that in the vast majority of these financial responsibility cases, our disposition would generally be toward an affirmance of the Secretary's suspension order, and certainly, wherever the liability of the appellant-operator is open to some question, we would not consider a reversal of the Secretary's decision. However, the facts of this particular case compel our attention and require us, in the exercise of our discretion, to grant relief to this appellant.

There is nothing in the evidence before the court to suggest that appellant has any legal liability to the

Estate of James Vibbert for the happening of the accident in New Jersey on April 19, 1963, which resulted in Vibbert's death. As noted in the findings of fact, appellant was driving reasonably and prudently, and was not doing anything even remotely suggestive of negligent conduct under the circumstances. His tractor-trailer was struck from the rear without warning by Amerman's passenger vehicle which was travelling at an unlawful rate of speed. The investigating officer's report, which was received into evidence, shows that the point of impact occurred in appellant's lane of travel, which was the outside right-hand lane on a three-lane highway. Amerman's vehicle left skid marks for 60 feet before reaching the point of impact in the lane lawfully occupied by appellant's tractor-trailer, and 18 feet of skid marks after impact. After veering off from striking the left rear of appellant's tractor-trailer, Amerman's vehicle came to rest in the middle of the three traffic lanes. The investigating officer reported that Amerman was inattentive to the operation of his automobile, and there is the strong suggestion that he had been imbibing alcoholic beverages prior to the accident. Conversely, the investigating officer's report suggests no improper driving on the part of appellant, and soon after the accident, appellant was relieved of any criminal responsibility by a committing magistrate, which in and of itself is an unusual circumstance and indicative of appellant's complete freedom from fault. As this opinion is written, eight months after the happening of the accident, no civil action has been instituted against appellant by the Vibbert estate, even though such an action has been instituted against the ostensibly responsible driver, the said Amerman. Finally, and again significantly, even though the Vibbert estate is represented by counsel, and has instituted an action for damages against the other operator, no demand for payment of damages, or for settlement and

compromise of any claim, has been made upon appellant.

Certainly we do not condone appellant's practice of operating a tractor-trailer on the highways without carrying liability insurance against damages which he may cause to others by his negligence. He should not be permitted to operate a motor vehicle in the future unless he is protected by liability insurance. However, under the facts and circumstances of this case, it is manifestly unfair to prevent this defendant from earning his livelihood because of his financial inability to post security for damages which in all probability he will never be required to pay. There is much merit in the provisions of the financial responsibility section of the Motor Vehicle Code, and it is thought by many to be in all respects superior to a compulsory insurance law which prevails in some States. Further, there is no question of the constitutionality of this law. See Roller, supra. While this statute is intended to furnish protection to innocent motorists, it must not become a device for collecting damages where liability is extremely doubtful or nonexistent. Obviously, we are not making any conclusion as to appellant's freedom from negligence which could rise to the status of res judicata on this issue. Notwithstanding this opinion, the personal representative of the Vibbert Estate, should he so desire, may hereafter institute an action for damages in the proper court against appellant, and should a judgment thereafter be entered against appellant, we would, upon application, approve with alacrity a suspension of his motor vehicle privileges until such judgment is satisfied in full.

In view of the discretion conferred upon this court by the legislature, and after a hearing de novo and a careful examination of all the facts and circumstances at hand, it is our reasoned conclusion that this suspension order must be set aside. Appellant must under-

stand that the order hereinafter entered is applicable only in the Commonwealth of Pennsylvania, and does not abrogate the effect of the New Jersey suspension order in that State, nor action that may be taken by any other State which enjoys reciprocity with New Jersey. We therefore enter the following

*Order*

And now, December 23, 1963, the appeal of Walter Zackowski from the order of the Secretary of Revenue suspending the said Zackowski's motor vehicle privileges for failure to post proof of financial responsibility in the State of New Jersey is sustained, and the said order is hereby set aside. Further, upon posting proof with the Secretary of Revenue that he now maintains in full force and effect motor vehicle liability policies on all vehicles owned by him, which policies shall comply with the specifications prescribed by section 1421 of The Vehicle Code, appellant's motor vehicle privileges shall be restored in full. Should he fail to post proof of maintenance of such policies within 30 days of the date of this order, the Secretary's aforesaid suspension order of August 23, 1963, shall be automatically reinstated in full force and effect, and the supersedeas granted by this court on August 28, 1963, shall stand revoked.